*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 11, 2014

**By ECF**
Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Correa*, 13 Cr. 289 - Restitution

Dear Judge Hellerstein:

    We write in advance of the March 12, 2014 conference concerning restitution in the above-referenced matter. At the sentencing, on January 30, 2014, the Court orally ordered the defendant to pay approximately $365,000 in restitution, but indicated that it would wait to sign a written order to that effect until defense counsel communicated any objections to the written order. There is no dispute that Medicaid is the victim of the defendant's crime. There is no dispute that the defendant defrauded Medicaid of at least $364,445.30. Nonetheless, defendant's counsel has refused to agree to a written order to that effect. Accordingly, the Government requests that the Court sign the attached proposed order of restitution in the amount of $364,445.30, payable to the New York State Department of Health, which pays Medicaid benefits.

    After the sentencing, the parties engaged in discussions to attempt to agree on the form of the restitution order. The parties were unable to agree. For the reasons set forth herein, including in particular that the defendant admitted in connection with his *Fatico* hearing and sentencing that he fraudulently billed Medicaid by the amount of restitution the Government now seeks, we submit that the Court should sign and enter the attached restitution order.

    I.    <u>Background</u>

        A.  Offense Conduct

    The defendant was charged on April 17, 2013 by Indictment 13 Cr. 289 (AKH) with one count of conspiracy to commit health care and wire fraud, and one count of conspiracy to receive and distribute misbranded and adulterated drugs. The charges stem, in part from the defendant's participation in a massive prescription drug diversion scheme in which the defendant, as a pharmacy owner, purchased thousands of bottles of second-hand medications off the black market, knowing full well that these bottles had been previously dispensed to other patients, before re-dispensing the same to his unsuspecting customers. In so doing, the defendant billed Medicaid for the "second hand" drugs his pharmacy dispensed, without disclosing that the

medicines had been purchased off the black market and knowing full well that Medicaid would not have paid for these second-hand medicines had it known their true origin.

On August 26, 2013, the defendant pleaded guilty to both counts of the Indictment without an agreement with the Government. As part of his allocution, the defendant admitted to purchasing and reselling bottles of medicine from two co-conspirators, Luis Santana and Bayohan Diaz, between 2010 and 2012. According to the defendant, he dispensed bottles of second-hand medicine to his customers "more than 30 times" during that period, knowing full well that the bottles "had been previously dispensed to patients with valid prescriptions by other pharmacies" and from which "the prescription labels were removed before" the defendant received them. (Plea Tr. 11). The defendant further admitted to "bill[ing] Medicaid . . . for reimbursement" as if the bottles were new, legitimate medications. (*Id.* at 12).

### B.  The Fatico Hearing

On January 14 and 16, 2014, the parties conducted a *Fatico* hearing and presented evidence regarding several factual issues in dispute, namely the loss caused by the defendant's participation in the scheme, as well as the risk of serious bodily injury created through the defendant's conduct. During that hearing, the Government offered the testimony of two of the defendant's co-conspirators, Luis Santana and Bayohan Diaz, each of whom testified pursuant to a cooperation agreement with the Government.

Of particular relevance to the restitution issue, the defendant offered records from his pharmacy documenting the loss caused to Medicaid by his conduct. These records confirmed that the defendant purchased more than 2,000 bottles of various second-hand medicines from Santana and Diaz over the two-year period in question, which he then dispensed and sought Medicaid reimbursement. According to the defendant's records, which the Court received into evidence as Defense Exhibits ("DX") A and B, these second-hand medicines – all of which the defendant concedes he re-dispensed to his patients and fraudulently billed Medicaid for – had a combined Medicaid reimbursement value of nearly $365,000. (DX A, DX B (together showing that the defendant fraudulently billed Medicaid $364,455.30 for approximately 2,110 bottles of various second-hand medicines purchased from Santana and Diaz)).

The defendant's counsel also conceded during arguments at the *Fatico* hearing that the defendant's conduct caused more than $360,000 loss to Medicaid, stating "We have done an analysis of the records, and our best estimate is that the loss in total is about $369,000." (Hr'g Tr. 6). Concerning the records, DX A and DX B, the defendant's counsel further explained:

> Now, your Honor, before addressing the records themselves, I would like to share with the court why I went about collecting these records and what I think is the most logical, straightforward way for calculating loss in this case. . . . There is . . . no dispute that the basis of Mr. Correa's defrauding of Medicaid is that he made claims to Medicaid for reimbursement. So what we did was, what I thought was the way to deduce the loss is to take the total amount of monies that Medicaid reimbursed Mr. Correa and also the total number of bottles that he was reimbursed for, the very total. If every claim that Mr. Correa had submitted to Medicaid was fraudulent, well then obviously a hundred percent of those reimbursements would be fraud.

(Hr'g Tr. 202-03).

At the conclusion of the hearing, the Court determined that the Medicaid value of the second-hand medicines purchased by the defendant, re-dispensed through his pharmacy, and for which Medicaid reimbursement was obtained was approximately $365,000.  (Hr'g Tr. 216).

### C.  The Sentencing

On January 30, 2014, the defendant appeared before the Court to be sentenced. The Court sentenced the defendant principally to 36 months' imprisonment. The Court also orally pronounced a sentence of restitution (Sent. Tr. 37-38). The Government provided a written proposed order effectuating the restitution. The Court permitted defense counsel time to comment on the proposed order. After sentencing, the Government and defense counsel engaged in lengthy discussions concerning the written restitution order that would implement the Court's oral pronouncement of the restitution component of the sentence. The parties were unable to agree on a written form.

## II.   Argument

There is no dispute that Medicaid is the victim of the defendant's crime. There is no dispute that the defendant defrauded Medicaid of $364,445.30. Accordingly, the Court should sign the proposed order of restitution attached hereto, which seeks the payment of $364,445.30 to the New York State Department of Health, which pays out under the Medicaid system.

### A.  Applicable Law

The Mandatory Victims Restitution Act ("MVRA"), primarily codified within Title 18, United States Code, Sections 3663A and 3664, requires a court sentencing a defendant convicted of an offense against property under Title 18, specifically including an offense committed "by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), to "order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). "Victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2); *United States* v. *Boyd*, 222 F.3d 47, 50 (2d Cir. 2000).

The Second Circuit has explained:

> [T]he MVRA's direct and proximate causation requirements both reflect "Congress's interest in maintaining efficiency in the sentencing process." The MVRA's direct causation requirement promotes efficiency because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation. Likewise the MVRA's proximate causation requirement promotes efficiency in the sentencing process by "limit[ing] a person's responsibility for the consequences of that person's own

>		acts[,] . . . reflect[ting] ideas of what justice demands, or of what is
>		*administratively possible and convenient.*"

*United States* v. *Marino*, 654 F.3d 310, 320 (2d Cir. 2011) (quoting *United States* v. *Reifler*, 446 F.3d 65, 135-36 (2d. Cir. 2006) (citations and internal quotation marks omitted)).

Section 3664(d)(6) provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(d)(6). It is the Government's responsibility to identify the victims of the defendant's offense. *United States* v. *Reifler* 446 F.3d at 121. Here, that victim, undisputedly, is Medicaid.

    B.  Discussion

Under the applicable law, the record generated during the lengthy post-plea proceedings in this case plainly supports the entry of an order directing the defendant to pay restitution in the amount of $364,445.30 to the victim of the fraud against the Medicaid system, the New York State Department of Health. Indeed, the defendant's concessions – both as to the amount and the identity of the victim, Medicaid – are an entirely sufficient basis for the restitution order.

For example, Defense Exhibits A and B, which defendant's counsel offered during the *Fatico* hearing, are the defendant's calculations of how much he defrauded Medicaid. Defense Exhibit A takes the total amount "Reimbursed from Government Benefit Program," subtracts amounts corresponding to legitimate purchases, and calculates a total $302,287.01 "Loss To Government Benefit Programs." Defense Exhibit B is similar in nature, calculating an additional "Loss to Government Benefit Programs" of $62,168.29. Thus, the defendant admits that there was a total loss of $364,445.30 – the amount sought by the Government – to "Government Benefit Programs," *i.e.*, Medicaid.

Similarly, the defendant conceded in his sentencing submission that he defrauded Medicaid in the amount sought in the restitution order. (Def. Sent. Sub. 4 ("After dispensing those [second-hand] medications to his customers, Mr. Correa fraudulently billed Medicaid for reimbursement. . . . "the Court found that the total amount of the fraudulent claims submitted to Medicaid was approximately $365,000, a sum that Mr. Correa readily acknowledges.")).

Yet again, at the defendant's sentencing, defense counsel conceded, "We certainly don't dispute that Mr. Correa defrauded Medicaid when he submitted these fraudulent claims. . ." (Sent. Tr. 7).

In post-sentencing conversations with counsel for the defendant, it has not been entirely clear what the basis is for the defendant's belief that he can avoid his restitution obligation by not consenting to the entry of the proposed written order. The defendant has never contended, nor could he, that the New York State Department of Health, identified by the Government as the victim, is not the agency that reimburses Medicaid benefits. As best as we understand the defendant's position, the defendant believes that he is relieved from paying restitution to the New York State Department of Health because Medicaid is administered by a pharmacy benefits manager; that is, according to defense counsel, the Medicaid reimbursement checks to the defendant's pharmacy may have been issued by that pharmacy benefits manager, which is an entity other than the "New York State Department of Health." That the New York State

Department of Health deemed it more efficient to operate reimbursement aspects of Medicaid through a pharmacy benefit manager, of course, has no bearing on whether it was a victim of the defendant's crimes. This is particularly true were, as here, there is no dispute that the New York State Department of Health is responsible for the reimbursements. *See generally United States* v. *Dhafir*, 342 F. App'x 702, 706 (2d. Cir. Aug. 18, 2009) (upholding restitution where Medicaid was the victim that was payable to the "New York State Medicaid Restitution Fund." The defendant's position is akin to arguing that in a case involving the defrauding of an employer out of salary, a defendant is not required to pay restitution to the victim employer because the employer used ADP payroll check services to administer payments by payroll check. Nothing in the MVRA requires this absurd result.

The defendant's position also is inconsistent with the purposes of the MVRA. As noted by the Second Circuit, Congress's interest in enacting the MVRA was to maintain efficiency in the sentencing process. *See United States* v. *Marino*, 654 F.3d at 320. Even if the logistics of Medicaid program – again, undisputedly the victim of the defendant's offense in the exact amount sought by the Government – are administered by a third party benefits manager, the existence of that manager does not make it "more difficult . . . to ascertain the amount of . . . damages attributable to the violation." *Id.*

In discussions with the Government, defense counsel has cited *Reifler* in support of his position. *See United States* v. *Reifler*, 446 F.3d 65 (2d. Cir. 2006) (Mr. Becker on the brief). *Reifler* is not applicable here. In *Reifler*, the Second Circuit vacated a restitution order in a "pump and dump" securities fraud case because the Government did not properly calculate an actual loss nor attribute it to the actual victims. *Id. Reifler* is inapposite here because the defendant has admitted the identity of his victim, Medicaid, and the loss he caused that victim, $364,445.30, which is what the Government now seeks as restitution. *Cf United States* v. *Kerekes*, 09 Cr. 137 (HB), 2012 WL 3526608, at *3 (Aug. 15, 2012) (Baer, J.) (distinguishing *Reifler* on the basis that it involved a situation where some individuals were included in the Court's restitution order "who were clearly not victims within the meaning of the MVRA" and ordering that restitution be paid to the Internal Revenue Service and).

For the reasons set forth herein, the Court should sign and enter the attached proposed order of restitution.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                    by: __s/ Jason Masimore_____
                              Jason A. Masimore/Edward B. Diskant
                              Assistant United States Attorneys
                              (212) 637-2580/2294

Attachment

cc: Gary G. Becker, Esq. (by ECF w/ Attachment)